**UNITED STATES of America,**
**Plaintiff,**

v.

**Everett LEE, Defendant.**

**No. CR 03–0997–PCT–DGC.**

United States District Court,
D. Arizona.

Dec. 22, 2003.

Dyanne C. Greer, Esq., U.S. Attorney's Office, Phoenix, AZ, for Plaintiff.

Gerald A. Williams, Esq., Federal Public Defender's Office, Phoenix, AZ, Stephen Robert Glazer, The Glazer Law Office PLLC, Flagstaff, AZ, for Defendant.

## ORDER

CAMPBELL, District Judge.

Following trial, the jury in this case found Defendant Everett Lee guilty of aggravated sexual abuse of a minor in violation of 18 U.S.C. § 2241(c). Defendant moved at the close of the government's case and again following the jury verdict for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. The Court reserved decision on the Motion as permitted by Rule 29(b). Additional briefing was provided by the Defendant and the government following trial. For the reasons explained below, the Court will deny the Motion for Judgment of Acquittal.

## I. BACKGROUND.

Defendant Everett Lee is a 32–year–old Indian who resides in Tuba City, Arizona. He has two years of college education and works in the construction trade in Flagstaff, Arizona. In order to find Defendant guilty of aggravated sexual abuse of a minor, the jury was required to find that he either engaged in a sexual act or attempted to engage in a sexual act with the victim in this case, a four-year-old child. *See* 18 U.S.C. § 2241(c). The jury was instructed, without objection, that "sexual act" means "the intentional touching, not through the clothing, of the victim's genitalia with an intent to abuse, humiliate, harass, degrade, arouse or gratify the sexual desire of any person." *See* 18 U.S.C. § 2246(2)(D).

The alleged offense occurred on August 8, 2003. At the time, the victim and her brother were being watched by their 18–year–old cousin, Melissa Keeswood, while the victim's parents were on a trip to Canada to bring home two older siblings who had been visiting grandparents. The victim's parents had asked Melissa to stay at their home and had given her a key to the house.

On the day in question, Melissa testified that she spent the day in Flagstaff with her 14–year–old sister, M.K., her 11–year–old brother, B.K., the victim, and the victim's brother. They returned to the victim's house at approximately 10:30 p.m. Defendant was at the house. Melissa knew Defendant because he was the boyfriend of another of Melissa's cousins. Melissa testified she had locked the house before departing, but had left the living room window open. Defendant was in the house when Melissa and the children arrived. When Defendant asked Melissa what she was doing there, Melissa explained that she had been asked to babysit

the victim and her brother. The Defendant responded, "So I heard."

Melissa testified that she was not concerned about Defendant's presence at the house. She said that he appeared to be slightly intoxicated, and there was beer in the house that had not been there when she had departed earlier in the day. Defendant sat down on a couch in the living room to watch the television. The victim laid down on a couch near him, and the victim's brother sat on another couch in the living room. Melissa, M.K., and B.K. went into one of the bedrooms to look at the merchandise they had purchased in Flagstaff.

Sometime later, B.K. left the bedroom and walked to the kitchen to get ice cream and soda pop. While doing so, he saw Defendant pick up the victim off the couch and carry her into another bedroom of the house. B.K. subsequently told Melissa what he had seen. It is not clear how much time elapsed between B.K.'s observation and when he reported it to Melissa.

Melissa left the bedroom where she had been with M.K. and B.K. and went to the bedroom where Defendant had taken the victim. When Melissa attempted to open the door to the bedroom, Defendant blocked the door and prevented it from being opened. Melissa testified that she tried for several minutes to open the door with the Defendant refusing to permit her entry. When Defendant finally opened the door, Melissa and B.K. saw the victim lying on a bed with a pillow covering her face and upper body. Defendant left the

house. Melissa and B.K. both testified that the victim appeared to be asleep. When Melissa awoke her, she noticed the victim was not wearing the shorts she had been wearing throughout the day and when they arrived at the house. Rather, the victim was wearing a larger pair of trousers that belonged to Melissa's 14-year-old sister, M.K. When Melissa instructed the victim to change back into her own shorts and the victim complied, she noticed that the victim's underwear were on backwards. B.K. testified that the victim was wearing her own shorts when Defendant carried her into the bedroom, but was wearing M.K.'s trousers when the door was finally opened.

On the following day, August 9, 2003, Melissa's mother called the police and reported the incident. A member of the Navajo Tribal Police responded to the call that afternoon. There was no evidence presented at trial concerning any findings that the Officer made as a result of his visit to the house. The parties stipulated that the victim was seen by a doctor on the evening of August 9 and that the doctor was unable to confirm or refute that she had been sexually abused.

In addition to the testimony of Melissa and B.K., the government presented the testimony of Special Agent Mark Robel of the Federal Bureau of Investigation ("FBI"). Agent Robel is assigned to the Flagstaff office of the FBI and investigates violent crimes on the Navajo Indian Reservation. Agent Robel testified concerning an interview he had with Defendant.[1]

---

**1.** Defendant moved before trial to suppress the testimony of Agent Robel concerning this interview. Following a voluntariness hearing at which Agent Robel and Defendant testified, the Court concluded that statements made by Defendant during the interview were voluntary and would be admitted into evidence. The Court also found that the statements made by the Defendant should not be sup-

pressed for failure to give a Miranda warning because the interview by Agent Robel was not custodial. *See Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) ("Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'"); *accord California v. Beheler,* 463 U.S. 1121, 1124, 103 S.Ct. 3517, 77 L.Ed.2d 1275

Agent Robel testified that he visited Defendant's house in connection with his investigation. Defendant's girlfriend told Agent Robel that Defendant was working in Flagstaff. Agent Robel left his card and asked that Defendant call him.

Several days later, Agent Robel received a telephone call from an individual who did not identify himself. The individual stated he wanted to speak with Agent Robel and would contact him on Friday. The following Friday, at approximately 11:45 a.m., Agent Robel received a telephone call from Defendant. Defendant asked if he could speak to Agent Robel in person. Agent Robel said yes, gave directions to the FBI office, and Defendant arrived at approximately noon.

Agent Robel testified that he and Defendant went into a small interview room that contained a desk and two chairs. Agent Robel asked Defendant if he knew why he was there. Defendant responded by saying that he was aware that the victim's family had accused him of abusing the victim. Defendant stated that the victim's family had obtained a restraining order that prevented him from going to their house. Agent Robel informed Defendant that their interview was voluntary and that Defendant would not be arrested that day regardless of what he said during the interview.

Although Defendant confirmed that he had been at the home of the victim on the evening of August 8, 2003, he initially denied having sexually abused her. He subsequently confirmed that he had carried the victim into a bedroom with the intent to touch her. He said he placed a pillow over her face so that she would not see him while he was touching her and then removed her shorts and underwear. De-

fendant said that at this point he heard Melissa approaching and stood to block the door. He hurriedly replaced the victim's clothing. He then left the house without having touched the victim.

When Agent Robel expressed doubt about Defendant's version of events, Defendant responded that he would tell Agent Robel the truth. He said he had removed the victim's clothing and had touched her "private parts" briefly. When he heard Melissa coming, he quickly replaced the victim's clothing and then stood and blocked the door for a few moments before finally opening it and leaving the house. Agent Robel asked the Defendant if by "private parts" he meant the victim's vaginal area, and Defendant said yes.

Defendant said that he wanted to apologize to the victim's family, but he was unable to do so because of the restraining order that had been issued against him. He asked if it would be appropriate to write a letter of apology. Agent Robel said yes, and provided Defendant with a piece of paper and a pencil or pen. Defendant then wrote a letter of apology in which he stated that he did not have sexual intercourse with the victim but that he "might have touched her in a wrong way." Defendant signed and dated the letter, as did Agent Robel, and the interview was concluded. Defendant left the FBI office approximately 30 minutes after the interview had begun and was not arrested until some time later.

## II. SUFFICIENCY OF THE EVIDENCE

■ Defendant argues that the evidence presented by the government was not sufficient to sustain the jury's verdict. In

---

(1983). *See generally Miranda v. Arizona,* 384 U.S. 436, 478–79, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ("[W]hen an individual is taken into custody or otherwise deprived of his free-

dom by the authorities ... the privilege against self-incrimination is jeopardized" and "[p]rocedural safeguards must be employed to protect the privilege.").

considering a motion for judgment of acquittal, the Court must ask whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Bahena–Cardenas,* 70 F.3d 1071, 1072–73 (9th Cir.1995) (citations and emphasis omitted).

More specifically, Defendant argues that his confession to Agent Robel cannot sustain his conviction because it was not sufficiently corroborated by independent evidence. Defendant relies on *Opper v. United States,* 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954), for the proposition that a confession cannot form the basis for a conviction unless the government produces independent evidence that a crime has been committed.

In this case, Defendant argues that the only evidence that he touched the victim is found in his confession to Agent Robel. Because touching is the central element of engaging in a sexual act with a minor, he contends that the government was required to produce independent evidence of this touching before his confession could be relied upon.[2]

### A. *Opper* and Its Progeny

In *Opper,* the defendant had been convicted of violating 18 U.S.C. § 281, which prohibits a person from bribing an employee of the federal government in connection with that employee's official duties. The defendant worked for a company that manufactured sun and ski goggles used in Air Force survival kits. He was convicted of giving $1,200 to a federal employee involved in deciding which manufacturer's goggles would be used in the emergency kits. The evidence demonstrated that the government had rejected Opper's goggles until the payment was made, at which point the decision was reversed.

Opper's conviction was based largely on statements he made to the FBI. Opper admitted that he paid $1,200 to the government employee, but claimed it was an unsecured, undocumented, non-interest-bearing loan that was made in cash. Because Opper's admissions constituted the only evidence of payment, he argued that his conviction could not be based solely on the admission—that independent evidence of the crime was required.

The Supreme Court evaluated law from several federal circuits and Great Britain. Although it concluded that the government must produce evidence that corroborates a confession before the confession can be used as the basis for conviction, it held that the government need not independently prove each element of the offense: "[W]e think the better rule to be that the corroborative evidence need not be sufficient, independent of the statements, to establish the corpus delicti. It is necessary, therefore, to require the Government to introduce substantial evidence which would tend to establish the trustworthiness of the statement.... It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth. Those facts plus other evidence besides the admission must, of course, be sufficient to find guilt beyond a reasonable doubt." 348 U.S. at 93, 75 S.Ct. 158.

The *Opper* decision is discussed at length in *United States v. Lopez–Alvarez,* 970 F.2d 583 (9th Cir.1992). In that case,

---

**2.** Defendant also argues that such independent corroborative evidence is required before a confession can be admitted into evidence. Because the Court finds the evidence sufficient to satisfy *Opper* and its progeny, admission of the confession was appropriate even if Defendant is correct. The Court therefore will not address this portion of Defendant's argument.

the Ninth Circuit concluded that *Opper* requires two kinds of corroborative evidence before a confession can be used as the basis for conviction. "[F]irst, although the state need not introduce independent evidence of the *corpus delicti* in conformance with the traditional test, it must introduce sufficient evidence to establish that the criminal conduct at the core of the offense has occurred." *Id.* at 592. The purpose for this requirement is to ensure that confessing defendants are not convicted of crimes that did not occur. *Id.* "Second, [the government] must introduce independent evidence tending to establish the trustworthiness of the admissions, unless the confession is, by virtue of special circumstances, inherently reliable." *Id.* The purpose for this second requirement is to ensure that defendants are not convicted for making false confessions to crimes that actually did occur. *Id.* Both kinds of corroborative evidence are required. *Id.* at 593. Indeed, "[O]nly when both [of] these prongs are satisfied will a jury be 'sufficiently justified' in believing the truth of a criminal admission; only then will the evidence be deemed sufficient in a case in which the conviction depends in part on such admission." *Id.* at 592.

## B. The First Prong of *Lopez–Alvarez*

Defendant argues that the evidence in his case fails to satisfy the first prong of the *Lopez–Alvarez* test. He asserts that there is no evidence, other than his confession, "to establish that the criminal conduct at the core of the offense has occurred." *Id.* Specifically, he asserts that there is no independent evidence that he touched the victim. Because touching is required for commission of a sexual act as defined by the statute, and commission of a sexual act is a "core element" of the offense charged, Defendant argues that the evidence in this case fails to satisfy the first prong and that the evidence therefore is insufficient to sustain a guilty verdict.

■ Defendant is correct in arguing that the government failed to present any independent direct evidence that he touched the victim. That evidence came solely from his confession to Agent Robel. The question presented by Defendant's motion, therefore, is whether the first prong of the *Lopez–Alvarez* test can be satisfied by circumstantial evidence. The Court concludes that it can.

The defendant in *Lopez–Alvarez* was convicted of various offenses arising from the kidnaping and murder of a DEA agent. There was no doubt that a kidnaping and murder had occurred because the body of the DEA agent had been found. It was in this context that the Ninth Circuit stated that the government "must introduce sufficient evidence to establish that the criminal conduct at the core of the offense has occurred." 970 F.2d at 592. In a crime such as murder, physical evidence will almost always be available as it was in *Lopez–Alvarez*. It is reasonable in such cases to require that the government produce independent physical evidence of the crime.

In the case of sexual abuse of a minor, however, it often is true that there will be no physical evidence of the crime. Moreover, the only two witnesses to the crime will be the child victim and the perpetrator. If the child victim is unable, unwilling, or incompetent to testify, the defendant alone will possess evidence that the actual touching occurred. If independent evidence to establish the touching were required in such cases, a defendant's confession, no matter how trustworthy it otherwise might be, could never form the basis for a criminal conviction.

The first prong of the *Lopez–Alvarez* test is based on an important public policy. Courts must take care to avoid convicting defendants, even defendants who confess, of crimes that in fact did not occur. 970

F.2d at 590. But when circumstantial evidence strongly suggests that the crime did occur, this risk is minimized.

In this case, strong circumstantial evidence corroborated Defendant's admission that he touched the victim's genitalia. First, Defendant was an uninvited guest at the victim's house on the night in question. The evidence presented at trial suggests that he entered the house through a living room window while Melissa and the children were away. Second, the undisputed evidence established that Defendant carried the child into a bedroom and closed the door. Third, when Melissa attempted to enter the room, Defendant barred the door and refused for several minutes to open it. Fourth, the child victim was found on the bed with a pillow covering her face and upper body. Fifth, the child victim was found wearing a different pair of trousers and with her underwear on backwards. All of this evidence corroborates Defendant's admission that he took the child into the room, disrobed her, and touched her.

If this circumstantial evidence did not exist—if Defendant had merely been at the house that evening and nothing suspicious had been observed by others who were present—then his confession to touching the child would be entirely uncorroborated. There would be no independent evidence to suggest that a crime occurred. In such a case a court might well conclude that the first prong of the Lopez–Alvarez test had not been established. But where Defendant went into the room with the child, prevented others from coming into the room, covered her face and upper body with a pillow, removed her shorts and underwear, and replaced her clothing backwards and with another pair of trousers, there is strong circumstantial evidence that Defendant abused the child while in the room. Because the crime of child abuse often will lack independent physical evidence and the victim often will be unable to testify, the crime differs from the murder addressed in Lopez–Alvarez. Where circumstantial evidence corroborates the confession in a case such as this, the Court concludes that the policy addressed in Lopez–Alvarez is satisfied and the confession, combined with the circumstantial evidence, can provide a sufficient basis for conviction.

This conclusion is supported by the Supreme Court's Opper decision. In Opper, the core elements of the offense were payment of money to a government employee to induce favorable action by that employee. Other than the defendant's admissions to the FBI, the government produced no evidence that a payment actually occurred. The government was able to prove only that a long-distance phone call had occurred between the defendant's home and the government employee's home on April 13, 1951, that the defendant had cashed a check in the amount of $1,000 on April 13, and that the government employee had made a round trip flight to Chicago (the defendant's home town) on April 14. Opper, 348 U.S. at 94, n. 12, 75 S.Ct. 158. The Supreme Court found that this circumstantial evidence was "substantial independent evidence to establish directly the truthfulness of the petitioner's admission that he paid the government employee money." Id. at 93–94, 75 S.Ct. 158.

█ Just as the government was unable to produce independent evidence of the payment in Opper, the government was unable to produce independent evidence of the touching in this case. However, like the circumstantial evidence that strongly supported the confession of payment in Opper, the circumstantial evidence in this case strongly supports Defendant's confession of touching the victim. "It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify

a jury *inference* of their truth." *Id.* at 93, 75 S.Ct. 158 (emphasis added). The circumstantial evidence produced by the government through the testimony of Melissa and B.K. supports the charges against Defendant and was sufficient for the jury to infer that the Defendant's confession was accurate and "sufficient to find guilt beyond a reasonable doubt." *Id; see Walters v. Maass,* 45 F.3d 1355, 1358 (9th Cir.1995) ("circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction.") (citation omitted).

■ The Court also notes that the crime of aggravated sexual abuse of a minor can be committed by an attempt to engage in a sexual act as well as the actual commission of the sexual act. To be guilty of attempt, a defendant must, with the intent to commit a crime, take a "substantial step" toward commission of the crime. *See Walters,* 45 F.3d at 1358–59; *United States v. Runco,* 873 F.2d 1230, 1232 (9th Cir.1989). Mere preparation to commit the crime is not a substantial step. *Id.*

■ The Court concludes that evidence independent of the confession was sufficient to show that Defendant took substantial steps toward sexually abusing the victim. Even if taking the child to the room and closing the door were acts of mere preparation, a jury reasonably could conclude that placing a pillow over the child's head, disrobing her, and blocking others from entering the room constituted substantial steps toward abuse. *See United States v. Hadley,* 918 F.2d 848, 853–54 (9th Cir.1990) (holding that where defendant asked boy to sit on his lap, tried to get boy to remove his clothes, and boy felt defendant getting an erection, "a rational jury could have concluded that [defendant's] actions constituted sufficient steps 'in the course of conduct planned to culminate in the commission of the crime.' ") (quoting *Runco,* 873 F.2d at 1232). Thus, the government has produced independent evi-

dence of the "core element" of attempt sufficient to satisfy the first prong of *Lopez–Alvarez.* The jury was instructed that the crime charged can be committed either through engaging in a sexual act or attempting to engage in a sexual act with a child. *See* 18 U.S.C. § 2241(c). The evidence was sufficient to support the jury's verdict.

## C. The Second Prong of *Lopez–Alvarez*

■ The second prong requires that the government "introduce independent evidence tending to establish the trustworthiness" of the confession. *Lopez–Alvarez,* 970 F.2d at 592. The Ninth Circuit has made clear that this second prong may be satisfied by the same evidence that satisfied the first prong. *Id.* at 590 n. 7.

The Court concludes that the circumstantial evidence recounted above sufficiently corroborates the confession of Defendant and demonstrates the confession's trustworthiness. In addition to these facts, the Court notes that Defendant voluntarily contacted Agent Robel, came to the FBI office, and was there for a total of 30 minutes. Defendant is reasonably well-educated, having had two years of college. He understood that charges had been made against him and a restraining order had been issued. For these reasons, the Court cannot conclude that the confession was the result of mistake or misunderstanding. When combined with the facts described by Melissa and B.K., these additional facts render the confession sufficiently trustworthy to satisfy the second prong of *Lopez–Alvarez.*

## III. CONCLUSION

Viewed in the light most favorable to the prosecution, the Court concludes that a rational trier of fact could have found the

essential elements of aggravated sexual abuse beyond a reasonable doubt.

**IT IS HEREBY ORDERED** that Defendant's Motion for Judgment of Acquittal is **DENIED**.