This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37859**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**RAKEEM GUADALUPE HAYNES,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Angie K. Schneider, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
William O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**HANISEE, Chief Judge.**

**{1}** Rakeem Guadalupe Haynes (Defendant) appeals, following a jury trial, from his conviction of receiving stolen property (dispose) (over $500), contrary to NMSA 1978, Section 30-16-11(I) (2006). On appeal, Defendant challenges the sufficiency of the evidence to support his conviction, specifically contending that the State failed to prove the corpus delicti of the alleged crime with any evidence other than Defendant's own statements. Defendant also challenges the admission of a Facebook conversation between himself and the alleged victim, Steve Pembleton. We reverse on the ground

that the State did not present sufficient evidence to support Defendant's conviction, and therefore do not reach the evidentiary issue.

**DISCUSSION**

**{2}** Substantial evidence claims may be raised for the first time on appeal. *State v. Stein*, 1999-NMCA-065, ¶ 9, 127 N.M. 362, 981 P.2d 295. "We review de novo any claim that the [s]tate failed to prove the corpus delicti of the charged offense, but we take all findings of fact that support a conviction as given if supported by substantial evidence." *State v. Martinez*, 2021-NMSC-012, ¶ 32, 483 P.3d 590 (internal quotation marks and citation omitted)*.*

**{3}** Defendant contends that the State presented no evidence establishing that he "disposed of the stolen firearm apart from his own admission that he had done so." Disposal of the firearm is a necessary element for Defendant's conviction. The corpus delicti rule provides that "unless the corpus delicti of the offense charged has been otherwise established, a conviction cannot be sustained *solely* on [the] extrajudicial confessions or admissions of the accused." *State v. Paris*, 1966-NMSC-039, ¶ 6, 76 N.M. 291, 414 P.2d 512 (emphasis added). "The term 'corpus delicti,' which literally means 'body of the crime,' refers to the evidence needed to establish that the charged crime was actually committed." *State v. Weisser*, 2007-NMCA-015, ¶ 10, 141 N.M. 93, 150 P.3d 1043 (quoting *Black's Law Dictionary* 369 (8th ed. 2004)), *abrogated on other grounds as recognized by State v. Bregar*, 2017-NMCA-028, ¶ 49, 390 P.3d 212. Two commonly cited reasons for the rule are, "to prevent the conviction of those who confessed to non-existent crimes as a result of coercion or mental illness . . . [and] promoting better police work by requiring the prosecution to prove its case without the aid of confessions." *Id.* ¶ 14 (internal quotation marks and citations omitted).

**{4}** In reviewing a corpus deliciti challenge to the sufficiency of the evidence, New Mexico applies a modified trustworthiness rule: "[A]n extrajudicial statement may be used to establish the corpus delicti where the statement is shown to be trustworthy and where there is some independent evidence to confirm the existence of the alleged loss or injury." *Id.* ¶¶ 17-18 (reviewing the rule announced in *Paris*, 1966-NMSC-039, ¶¶ 11, 13). "Although subsequent decisions raised questions as to whether *Paris* was still the correct standard, the *Paris* rule was ultimately adopted by [this Court] in *Weisser* . . . and by [our New Mexico Supreme Court] in [*State v.*] *Wilson*, 2011-NMSC-001, ¶ 16, 149 N.M. 273, 248 P.3d 315[, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37, 275 P.3d 110]." *Martinez*, 2021-NMSC-012, ¶ 31. "Now, 'under New Mexico's modern approach, a defendant's extrajudicial statements may be used to establish the corpus delicti when the prosecution is able to demonstrate the trustworthiness of the confession and introduce some independent evidence of a criminal act.' " *Id.* (alteration omitted) (quoting *Wilson*, 2011-NMSC-001, ¶ 15). "This independent evidence can consist of either direct or circumstantial evidence, but such evidence must be independent of a defendant's own extrajudicial statements." *Bregar*, 2017-NMCA-028, ¶ 46 (internal quotation marks and citation omitted).

**{5}** In *Weisser*, this Court stated that, "[w]e do not think that the fact that [the d]efendant made multiple extrajudicial statements . . . is sufficient to establish the trustworthiness of his statements." 2007-NMCA-015, ¶ 30. "Rather, we believe that the evidence used to establish the trustworthiness of [the d]efendant's statements must actually concern the content of his statements, not merely the circumstances surrounding them." *Id.*; *see id.* (citing *Doe v. State*, 1980-NMSC-076, ¶¶ 3-6, 94 N.M. 548, 613 P.2d 418, which held that "although the defendant confessed twice to stealing alcohol, there was no corroborating evidence to support the allegation that the defendant actually stole the alcohol"). In *Wilson,* our Supreme Court described the required evidence of trustworthiness as "independent corroborative proof tending to establish that when the defendant confessed he was telling the truth[.]" 2011-NMSC-001, ¶ 13.

**{6}** In the present case, Mr. Pembleton reported to police in 2012 that his gun, which he had been carrying "in the small of his back," fell out onto a couch where he was sitting or somehow otherwise went missing when he recently had been at a house with a group of people, including Defendant. Mr. Pembleton searched the house and everyone present but did not find the gun. Nearly five years later, in 2017, Mr. Pembleton reported to the police that he had recently had an exchange with Defendant through Facebook Messenger regarding the gun. That exchange was admitted at trial, and contained the following statements from Defendant: "I did find your gun okay[,] and I sold your gun but I never stole it from you[.]" Defendant went on to state in the exchange that he found the gun about a week after it had gone missing and sold it to a friend, Ed, who Defendant believed had sold the gun in turn, and he told Mr. Pembleton that Ed had just passed away.

**{7}** After Mr. Pembleton returned to the police with this information, an officer conducted a voluntary, noncustodial interview with Defendant in August 2017. During the recorded interview, which was played at trial, Defendant generally repeated his admission that he was present when the gun went missing, he later came into possession of the gun, and he sold it to his friend Ed, who had recently passed away. Defendant testified similarly at trial, while also stating that he did not recognize the gun and only realized it was Mr. Pembleton's after he had sold it. Apart from the two prior admissions by Defendant, the testimony of Mr. Pembleton, Defendant, and the officer regarding the loss of the gun and Defendant's admissions, no other evidence was presented.

**{8}** Therefore, the only independent evidence presented, apart from Defendant's admissions, was that Mr. Pembleton's gun went missing in 2012. To the extent the State asserts that the fact that some parts of Defendant's admissions are corroborated by Mr. Pembleton's versions of events—in that they essentially agree on where and when Mr. Pembleton noticed the gun was missing—this corroboration is insufficient to support the trustworthiness of the essential facts to which Defendant confessed. *See Weisser*, 2007-NMCA-015, ¶ 15 ("[I]t is sufficient if the corroboration of [the defendant's statements] supports the essential facts admitted sufficiently to justify a jury inference of their truth." (internal quotation marks and citation omitted)); *State v. Hardy*, 2012-

NMCA-005, ¶ 8, 268 P.3d 1278 ("Thus, the facts to which a defendant confesses, not their circumstantial matrix, require independent corroboration."). Stated differently, this evidence is not sufficient to corroborate the content of Defendant's admission—that he found the gun *and* sold it to Ed. *See Weisser*, 2007-NMCA-015, ¶ 30 ("[T]he evidence used to establish the trustworthiness of [the d]efendant's statements must actually concern the content of his statements, not merely the circumstances surrounding them."). This is particularly so given that the latter aspect of Defendant's admission is that for which he was convicted in this case. It is, moreover, well established that Defendant's multiple admissions do not corroborate each other or render each one more trustworthy, and we are unpersuaded by the State's assertion that "the repeated and consistent nature of Defendant's admissions here should be taken into account." *See Weisser*, 2007-NMCA-015, ¶ 30 ("We do not think that the fact that [the d]efendant made multiple extrajudicial statements . . . is sufficient to establish the trustworthiness of his statements."). We instead agree with Defendant that "the fact that he . . . has repeated the incriminating statement does not make it trustworthy."

**{9}** We therefore next consider the State's arguments that other independent evidence did render Defendant's admissions trustworthy. First, the State contends that the absence of the gun proves that Defendant disposed of it, arguing that "[t]he only logical reason Defendant would be unable to produce the firearm—particularly where doing so meant he could avoid a criminal charge—is that *he disposed of it in some way.*" We disagree. Defendant might have been unable to produce the gun for a variety of reasons, including that he never had it in his possession. To the extent the State asserts the difficulties of proving a negative by relying on tampering or disposing of evidence cases, we find that authority unpersuasive. *See State v. Garcia*, 2011-NMSC-003, ¶ 13, 149 N.M. 185, 246 P.3d 1057 (holding that "when a tampering [with evidence] conviction is based on concealing evidence, conviction is not predicated on actual recovery of the evidence"). Rather, in the context of the trustworthiness doctrine, the State is not required to actually recover the gun; the State need only present independent evidence of its disposal in addition to Defendant's statements, and the mere absence of the gun is therefore insufficient to corroborate the statements about the circumstances of its disposal.

**{10}** To the extent the State relies on *Paris* and asserts the facts are similar to the present case, we note that in *Paris*, the disappearance of some money was closely correlated to the defendant's—and only the defendant's—actions, and can be distinguished from the present case, where the gun went missing in the presence of many people and Defendant's admissions came five years after the gun disappeared. *See* 1966-NMSC-039, ¶¶ 4, 12-13 (determining that the defendant's admission of taking money from his workplace was corroborated by evidence from his employer that the defendant only worked three days and never returned after the money went missing, and the defendant was given a key that allowed access to the money).

**{11}** Last, the State asserts that reversal would not serve the purpose of the corpus delicti rule, which is designed "to prevent the conviction of those who confessed to non-existent crimes as a result of coercion or mental illness . . . [and] promoting better police

work by requiring the prosecution to prove its case without the aid of confessions." *Weisser*, 2007-NMCA-015, ¶ 14 (internal quotation marks and citation omitted). First, we note that without independent corroboration of Defendant's statements in this case, we cannot rule out the possibility that coercion or other pressure drove Defendant to make the admissions, a fact that the State's emphasis on Defendant's appearance of mental health ignores. Second, the State's assertion that the police could not have investigated further, because "[t]he only possible witness who could have confirmed that Defendant sold Mr. Pembleton's firearm was deceased," does not consider or explain why the police could not obtain testimony from the other people present when the gun went missing or identify the person Defendant claimed had passed the gun along to him. Even if the only possible independent evidence was lost when that witness passed away, such a circumstance does not obviate the requirement that the State present sufficient evidence to support Defendant's conviction. We determine it failed to do so in this case.

**CONCLUSION**

**{12}**    For the foregoing reasons, we reverse Defendant's conviction as it was not supported by sufficient evidence. As we reverse on this basis, we do not consider Defendant's remaining evidentiary issue on appeal.

**{13}    IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**JANE B. YOHALEM, Judge**