| STATE V. OLIPHANT |
|---|

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**STATE OF NEW MEXICO,**
**Plaintiff-Appellee,**
**v.**
**PATRICK ROBERT OLIPHANT,**
**Defendant-Appellant.**

Docket No. A-1-CA-35841
COURT OF APPEALS OF NEW MEXICO
April 2, 2019

APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY, Lisa B. Riley, District Judge

**COUNSEL**

Hector H. Balderas, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, NM, for Appellee

The Law Offices of Scott M. Davidson, PH.D., Esq., Scott M. Davidson, Albuquerque, NM, for Appellant.

**JUDGES**

JULIE J. VARGAS, Judge. WE CONCUR: JENNIFER L. ATTREP, Judge, BRIANA H. ZAMORA, Judge

**AUTHOR:** JULIE J. VARGAS

**MEMORANDUM OPINION**

**{1}** Defendant Patrick Robert Oliphant was convicted of five counts of criminal sexual penetration of a minor (CSPM) in violation of NMSA 1978, Section 30-9-11(D)(1) (2009), two counts of second-degree criminal sexual contact of a minor (CSCM) (unclothed) in violation of NMSA 1978, Section 30-9-13(B)(1) (2003), and two counts of third-degree CSCM (clothed) in violation of Section 30-9-13(C)(1). Defendant appeals his convictions, raising the following issues: improper admission of his extrajudicial

confession, sufficiency of the evidence, speedy trial, due process, and double jeopardy. We affirm.

**BACKGROUND**

**{2}**     Defendant's convictions stem from his sexual abuse of Victim while they lived in the same house. In February 2012, when Victim was four years old, she, her mother (Mother), her father, and her younger sister moved into a house with her maternal grandfather and Mother's former step-brother, Defendant. Initially, Victim and her immediate family lived upstairs along with her grandfather, while Defendant lived downstairs. In July 2012 Victim and her immediate family moved downstairs, and Defendant moved upstairs.

**{3}**     Defendant moved out of the house in either February or March 2013, later moving to Michigan. In May 2013 he informed the police that he had sexually abused Victim on nine to ten separate occasions from June to September 2012, providing specific details of each instance of abuse. Defendant admitted to inappropriately touching Victim's clothed and unclothed breasts and genital area. Defendant informed the officers that he performed cunnilingus on Victim once and, on multiple occasions, had rubbed his finger and penis on Victim's vulva and briefly inserted his finger and penis. While Victim remained clothed for most of these instances of sexual abuse, Defendant explained that he removed Victim's underwear on one occasion. Defendant stated these acts took place upstairs, in either his bedroom or the living room, when he babysat Victim as well as when the other family members were in the house. Defendant noted that on two occasions Victim was watching television, and that on one of those occasions she did not respond or "change what she was doing at all," while he sexually abused her. Defendant recounted one occasion when he inappropriately touched Victim after reading a book to her on his bed. Defendant was charged with six counts of CSPM and three counts of criminal CSCM (unclothed).

**{4}**     At Defendant's trial, Mother testified that in the summer of 2012 she would often leave Victim and Victim's sister with Defendant while she went to the store or ran errands. She testified that although Defendant was not available to babysit Victim while he was in high school, he was able to do so during the summer. Mother testified that she sometimes left both her daughters with Defendant, "but usually just [Victim]." Mother explained that Defendant continued to watch Victim after Victim started preschool in either August or September 2012 when Defendant started college. Mother noted that when Defendant babysat Victim, they played computer games and watched television in the upstairs living room, and read books together in either Defendant's room or the upstairs living room.

**{5}**     Mother further testified that while Victim enjoyed staying with Defendant when they first moved to the house, her behavior changed toward the end of 2012. Mother explained that, "[t]owards the end of the year, when I would like go to the store or something and I would ask [Defendant] to watch [Victim], she wouldn't want to stay with

him anymore. She would rather have gone with me, which is weird, because she absolutely despises grocery shopping."

**{6}**     When discussing whether she noticed "any odd behavior" between Defendant and Victim, Mother recounted an incident when they were all watching television upstairs. As they were watching television, Defendant was lying on the couch on his back with Victim lying on top of him on her back. When Victim got up, Defendant "readjusted himself and it appeared that he had an erection at the time[.]" When asked whether Victim ever complained about any of her body parts hurting, Mother explained that Victim told her "it hurt when she [peed]," and that Mother used diaper rash ointment on Victim as a result. While Mother initially believed Victim's pain to be attributable to Victim possibly not cleaning herself properly after using the restroom, she noted that Victim was "potty-trained" when she was three years old.

**{7}**     Victim also testified about the abuse that occurred three years prior when she was four years old. She testified that Defendant touched her "private parts," namely her breasts, buttocks, and genital area with his hand. When asked if Defendant touched her skin or her clothes, Victim responded, "Clothes." Following Victim's testimony, the State admitted a recording of Defendant's May 2013 confession into evidence.

**{8}**     Defendant was convicted of five counts of CSPM, two counts of CSCM (clothed), and two counts of CSCM (unclothed), one of which was a lesser-included offense for a sixth charged count of CSPM. This appeal followed. We reserve our discussion of the procedural history for our speedy trial analysis.

## I.     DISCUSSION

**{9}**     Defendant raises the following points on appeal: (1) the district court improperly admitted his extrajudicial confession as it relates to his convictions for CSPM and CSCM (unclothed); (2) the State violated Defendant's right to a speedy trial; (3) the State violated Defendant's due process and double jeopardy rights by prosecuting him under "multiple carbon-copy counts" with identical jury instructions for different counts. We address each argument in turn.

## A.     Admission of Extrajudicial Confession

**{10}**     Defendant first argues the district court erred in admitting his extrajudicial confession. In particular, Defendant contends the State failed to establish either the trustworthiness of his confession or the corpus delicti of CSPM and CSCM (unclothed), such that the district court's admission of his confession violated New Mexico's modified trustworthiness doctrine.

**{11}**     "The corpus delicti rule provides that unless the corpus delicti of the offense charged has been otherwise established, a conviction cannot be sustained *solely* on the extrajudicial confessions or admissions of the accused." *State v. Weisser*, 2007-NMCA-015, ¶ 10, 141 N.M. 93, 150 P.3d 1043 (alteration, internal quotation marks, and citation

omitted), *abrogated in part on other grounds by State v. Bregar*, 2017-NMCA-028, ¶ 49, 390 P.3d 212. "The term 'corpus delicti,' which literally means 'body of the crime,' refers to the evidence needed to establish that the charged crime was actually committed." *Id.* The existence of the corpus delicti of an offense is demonstrated by a factual showing that (1) "a harm or injury occurred" and (2) "the harm or injury was caused by a criminal act"—the perpetrator's identity is immaterial. *Id.* "[T]he corpus delicti rule has traditionally governed the admissibility of extrajudicial confessions." *State v. Hardy*, 2012-NMCA-005, ¶ 7, 268 P.3d 1278 (emphasis, internal quotation marks, and citation omitted). It functions as both a rule of evidence and a rule of substantive criminal law. *Id.* (internal quotation marks and citation omitted). As a rule of evidence "it bars the admission of an extrajudicial confession until a predicate showing is made that the crime charged was committed by someone." *Id.* As a rule of substantive criminal law, the corpus delicti rule "requires a conviction based on a confession to be supported by the requisite degree of proof of the corpus delicti." *Id.* (emphasis, internal quotation marks, and citation omitted).

**{12}** Under the modified trustworthiness doctrine adopted by our Supreme Court, "an extrajudicial statement may be used to establish the corpus delicti where the statement is shown to be trustworthy and where there is some independent evidence to confirm the existence of the alleged loss or injury." *Weisser*, 2007-NMCA-015, ¶ 18; *see State v. Wilson*, 2011-NMSC-001, ¶ 15, 149 N.M. 273, 248 P.3d 315 (adopting the rule announced in *State v. Paris*, 1966-NMSC-039, ¶¶ 9, 10, 76 N.M. 291, 414 P.2d 512, and clarified in *Weisser*), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37, 275 P.3d 110. Our rule "require[s] that at least some evidence independent of a defendant's confession actually touch upon the corpus delicti." *Weisser*, 2007-NMCA-015, ¶ 18. To the extent Defendant "contends that the undisputed facts do not establish the corpus delicti of the crime as a matter of law, our standard of review is de novo." *Wilson*, 2011-NMSC-001, ¶ 17 (emphasis omitted). "[W]here the determination of the corpus delicti rests on disputed facts, we will defer to the district court's findings of fact, provided that such findings are supported by substantial evidence." *Weisser*, 2007-NMCA-015, ¶ 7. The corpus delicti of CSPM in this case is established by proving that (1) the minor engaged in cunnilingus, fellatio, or anal intercourse, or the minor's genital or anal openings were penetrated, and (2) that this harm was caused by someone's criminal agency. *See* § 30-9-11(A), (D)(1); *cf. Weisser*, 2007-NMCA-015, ¶ 10 (explaining the components of a crime's corpus delicti). The corpus delicti of CSCM (unclothed) in this case is "established by evidence proving that (1) the minor's intimate parts were touched by someone[,] and (2) that this harm was caused by someone's criminal agency." *See* § 30-9-13(A); *Weisser*, 2007-NMCA-015, ¶ 26.

**{13}** Consistent with the rule in *Weisser*, we first determine whether Defendant's extrajudicial confession was shown to be trustworthy. 2007-NMCA-015, ¶ 27. "[T]he evidence used to establish the trustworthiness of [the d]efendant's statements must actually concern the content of his statements, not merely the circumstances surrounding them." *Id.* ¶ 30. In ruling on the admissibility of the recording of Defendant's confession in this case, the district court stated:

The corroboration that I am relying on in this decision are that there's already been testimony by the child's mother that these things happened while he was babysitting, that they—he was always upstairs with her, that this happened mostly during the—or, I'm sorry, that he babysat her mostly during the summer because that's when he was available due to his school schedule, and the statements made during—in his extra-judicial statement, his confession, were that it happened while he was babysitting, it happened while he was upstairs with her, happened mostly during the summer months, which would correlate with [what] the mom said about when he was mostly keeping her.

**{14}** In addition to the facts relied upon by the district court, our review of the record reveals facts further establishing the trustworthiness of Defendant's confession. *See Wilson*, 2011-NMSC-001, ¶ 20 (explaining that in evaluating whether there was sufficient evidence confirming the trustworthiness of a defendant's confession, an appellate court is not confined to the facts relied upon by the district court, but "performs its own review of the record and supplements the [district] court's findings as needed"). Victim's testimony confirmed the existence of certain criminal acts Defendant admitted to in his taped confession, namely that he touched her clothed breasts and genital area with his hand. We note that while Defendant highlights certain inconsistencies between Victim's testimony and Defendant's confession, "the mere fact that there was testimony or evidence calling the trustworthiness of Defendant's admission into question does not negate that there was also corroborating evidence." *State v. Owelicio*, 2011-NMCA-091, ¶ 31, 150 N.M. 528, 263 P.3d 305. "Instead, the existence of contradictory evidence merely raises a credibility issue to be resolved by the fact[-]finder." *Id.* Upon consideration of the district court's factual findings along with Victim's testimony, we conclude that Defendant's confession was sufficiently corroborated. *See Weisser*, 2007-NMCA-015, ¶ 15 ("[P]roof of any corroborating circumstances is adequate which goes to fortify the truth of the confession or tends to prove facts embraced in the confession." (internal quotation marks and citations omitted)).

**{15}** Second, we consider whether the State provided some independent evidence confirming the existence of the alleged injuries. *See id.* ¶ 25. Defendant argues that while there was evidence corroborating his convictions for CSCM (clothed), no such evidence was presented relating to CSCM (unclothed) or CSPM. In response, the State contends that the modified trustworthiness doctrine adopted by our Supreme Court focuses on the trustworthiness of the defendant's admission and confession—requiring [that] only . . . *some evidence* independent of a defendant's confession actually touch upon the corpus delicti." (emphasis added). *See id.* ¶ 18. While Defendant suggests we adopt a per se rule that each confessed act of sexual abuse must be independently corroborated, he cites no New Mexico authority to support his argument. Indeed, our Supreme Court recognized that the quantum of independent evidence needed to establish an alleged loss or injury in a given case depends on the facts and circumstances in each case. *See Paris*, 1966-NMSC-039, ¶ 8 (discussing the diversity of views among various jurisdictions regarding the quantum of independent evidence necessary to establish the corpus delicti, and concluding that "it would be imprudent to

say that one particular hair-splitting formula has the support of a majority[, and that t]his is particularly true when we consider that each case must turn on its own facts and circumstances" (citation omitted)).

**{16}** Before considering whether the State provided independent evidence of the alleged injuries, as required by *Weisser*, we again note Defendant does not contest the State's presentation of some evidence confirming the alleged injuries involved in the two counts of CSCM (clothed). At issue are the five counts of CSPM and two counts of CSCM (unclothed). We recognize that in *Weisser* we concluded changes in the victim's behavior, "i.e., her nightmares and withdrawal from strangers," were insufficient on their own to establish independent proof of the alleged harm involved in CSCM. 2007-NMCA-015, ¶¶ 32, 36. We explained that "[i]n the absence of physical evidence of the abuse, we believe that the circumstantial evidence used to independently prove the loss or injury must be more than a small number of behavioral symptoms susceptible to different inferences." *Id.* ¶ 34. *Weisser*, however, cited with approval to the Massachusetts Court of Appeals decision in *Commonwealth v. Villalta-Duarte*, 774 N.E.2d 1144 (Mass. App. Ct. 2002), as an example of a case in which sufficient circumstantial evidence existed to prove a young child had been abused when the child cried hysterically when brought to the defendant's apartment, developed an intractable diaper rash, and had scratches on her face.

**{17}** In this case, as in *Villalta-Duarte*, the State presented more than a small number of behavioral symptoms. In addition to Mother's testimony that Victim's behavior changed toward the end of 2012 such that she no longer wanted to stay with Defendant while Mother ran errands, the State presented testimony from Victim that Defendant touched her private parts (or "pee-pee" and "chi-chis") over her clothes, as well as testimony from Mother that Defendant appeared to develop an erection when Victim lied down on him, that Victim complained that "it hurt when she [peed,]" and that Mother treated her with a diaper rash ointment. Although this evidence could arguably be explained by something other than sexual abuse, this Court later abrogated the "susceptible to multiple inferences" principle relied on in *Weisser*. *See Bregar*, 2017-NMCA-028, ¶ 49. Instead, "our task on appeal involves first drawing every reasonable inference in favor of the jury's verdict, and then evaluating whether the evidence, so viewed, supports the verdict." *Id.* (alterations, emphasis, omission, internal quotation marks, and citation omitted). In light of this standard, we conclude the State provided adequate proof of the alleged injury to Victim. *See Weisser*, 2007-NMCA-015, ¶ 35. Accordingly, the district court did not err in admitting Defendant's confession.

## B.     Speedy Trial

**{18}** Defendant next contends that his right to a speedy trial was violated. "In a criminal prosecution, the accused is constitutionally entitled to a speedy trial." *State v. Castro*, 2017-NMSC-027, ¶ 15, 402 P.3d 688. "The right to a speedy trial is unique in that it balances two separate interests: (1) preventing prejudice to the accused, and (2) protecting societal interests in bringing the accused to trial." *Id.* "Whether a defendant has been deprived of the right requires a case-by-case analysis." *State v. Dorais*, 2016-

NMCA-049, ¶ 20, 370 P.3d 771. When analyzing a speedy trial claim, we assess "the four factors presented by the United States Supreme Court in *Barker* [*v. Wingo*, 407 U.S. 514 (1972)] and adopted by New Mexico courts: (1) the length of delay in bringing the case to trial, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Castro*, 2017-NMSC-027, ¶ 16 (alterations, internal quotation marks, and citation omitted). "Each of these factors is weighed either in favor of or against the state or the defendant, and then balanced to determine if a defendant's right to a speedy trial was violated." *State v. Brown*, 2017-NMCA-046, ¶ 13, 396 P.3d 171 (alteration, internal quotation marks, and citation omitted). "The factors have no talismanic qualities, and none of them are a necessary or sufficient condition to the finding of a violation of the right to a speedy trial." *Id.* (alterations, internal quotation marks, and citation omitted). "Rather they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* (internal quotation marks and citation omitted). "In our review of a speedy trial ruling, this Court must give deference to the district court's factual findings, but we review the weighing and the balancing of the *Barker* factors de novo." *Id.* (internal quotation marks and citations omitted).

## 1.    Length of Delay

**{19}**    "The 'length of delay' factor . . . acts as a threshold triggering mechanism used to determine whether the delay is 'presumptively prejudicial' so as to continue with a full speedy trial analysis." *Id.* ¶ 14 (citation omitted). "If the delay crosses the 'presumptively prejudicial' threshold, a speedy trial analysis is warranted." *Id.* "A delay is presumptively prejudicial if the delay exceeds twelve months for a simple case, fifteen months for a case of intermediate complexity, and eighteen months for a complex case." *Id.* (alterations, internal quotation marks, and citation omitted). Defendant disputes the district court's finding that this was a complex case. The district court based its finding on Victim's young age, the issue regarding her competency, and the State's reliance on an out-of-state witness for purposes of trial. We note that generally "we defer to the district court's finding on the question of complexity when that finding is supported by substantial evidence." *State v. Thomas*, 2016-NMSC-024, ¶ 11, 376 P.3d 184 (alterations, omissions, internal quotation marks, and citation omitted). Here, the district court's finding is supported by the number of charges, the nature of the allegations, and the difficult evidentiary issues, including Victim's competency to testify. *See id.* We thus conclude this was a complex case, for which a delay of more than eighteen months is considered presumptively prejudicial. *Brown*, 2017-NMCA-046, ¶ 14.

**{20}**    Defendant was arrested in this case on June 13, 2013, and was brought to trial on July 21, 2015. This approximately twenty-five month length of delay exceeded the presumptively prejudicial threshold for complex cases by approximately seven months. We therefore weigh this factor slightly against the State. *See State v. Ochoa*, 2017-NMSC-031, ¶¶ 16-17, 406 P.3d 505 (weighing a length of delay six months past the presumptively prejudicial threshold for a complex case "only slightly against the [s]tate").

## 2.    Reasons for Delay

**{21}** "Closely related to the length of delay is the reason the [state] assigns to justify the delay." *Brown*, 2017-NMCA-046, ¶ 18 (alteration, internal quotation marks, and citation omitted). "The reasons for a period of the delay may either heighten or temper the prejudice to the defendant caused by the length of the delay." *State v. Garza*, 2009-NMSC-038, ¶ 25, 146 N.M. 499, 212 P.3d 387 (internal quotation marks and citation omitted). New Mexico recognizes four types of delay: (1) "intentional delay" is the state's "deliberate attempt to delay prosecution of the case in order to hamper the defense . . . [and] weighs heavily against the state"; (2) "negligent or administrative delay," while weighing "more lightly against the state," weighs more heavily against the state as the length of delay increases; (3) "[delay] justified for valid reasons" is weighed neutrally; and (4) "delay caused by the defense" is weighed against the defendant. *Brown*, 2017-NMCA-046, ¶ 18 (alteration, internal quotation marks, and citations omitted). "The complicated circumstances of this case require that we analyze each period of delay separately." *Id.*

**{22}** Following Defendant's arrest, the State on July 9, 2013, filed a demand for alibi or entrapment defense, a list of witnesses, the State's disclosure, and a demand for Defendant's disclosure. Although it does not appear in the record, both parties agree that Defendant filed a motion for a forensic evaluation on June 27, 2013, which was resolved on December 20, 2013. The case was proceeding normally toward trial from June 13, 2013 to June 27, 2013, a total delay of fourteen days, and we therefore weigh this period neutrally. *See id.* ¶ 19 (weighing as neutral the period of delay during which "the case was proceeding normally toward trial"). As Defendant conceded below, the delay from June 27, 2013, to December 20, 2013, was attributable to his motion for a forensic evaluation. In the absence of evidence demonstrating either that the State failed to bring Defendant to trial in a timely manner from June 27, 2013 to December 20, 2013, or that the delay was unreasonable, "solely attributable to [defense] counsel[,]" or unnecessary, we weigh this period of five months and twenty-three days against Defendant. *See State v. Stock*, 2006-NMCA-140, ¶¶ 19-22, 29, 140 N.M. 676, 147 P.3d 885 (recognizing that, as a general proposition, delays resulting from competency evaluations are "for the defendant's benefit and the defendant [is] responsible for them" for speedy trial purposes, but declining to weigh against the defendant the "extraordinary delay" there involved, resulting from both the defense counsel's prolonged failure to send the evaluation report to the state or to the court, and the state's "failure to monitor the case and ensure that steps were being taken to bring [the d]efendant to trial in a timely manner"); *see generally State v. Steinmetz*, 2014-NMCA-070, ¶ 47, 327 P.3d 1145 (weighing "the delay caused by the necessity of resolving [the d]efendant's motions" against the defendant).

**{23}** Following the resolution of Defendant's motion for a forensic evaluation, the case proceeded normally toward trial. On January 7, 2014, the district court scheduled a pretrial hearing for March 3, 2014, and a jury trial for March 11, 2014. On February 11, 2014, however, Defendant filed an unopposed motion to continue both settings, citing the shortage of attorneys on staff and the need for additional time to prepare. On February 13, 2014, the district court granted Defendant's motion for continuance, rescheduling the pretrial hearing for May 27, 2014, and the jury trial for June 3, 2014.

We weigh the period from December 20, 2013 to March 11, 2014, a total delay of two months and nineteen days, neutrally, as the case was moving normally toward trial. *See Brown*, 2017-NMCA-046, ¶ 19. The delay of two months and twenty-three days from March 11, 2014 to June 3, 2014, was caused by defense counsel's need for additional time to prepare for trial. As a result, we weigh this period against Defendant. *See State v. Deans*, 2019-NMCA-015, ¶ 10, ___ P.3d ___ ("[A]ny delay caused by the defendant generally weighs against the defendant."). *But see Ochoa*, 2017-NMSC-031, ¶ 22 (concluding that a period of delay caused by defense counsel's need to adequately prepare for trial after three postponements of interviews with the state's witnesses was a "legitimate reason for [the d]efendant to seek to postpone" trial and thus does not weigh against him).

**{24}**    On May 27, 2014, the district court granted the State's in-court motion to continue, rescheduling the date of trial for July 15, 2014. The State's motion was based on its inability to bring an out-of-state witness to New Mexico in a timely fashion. We therefore conclude the delay of one month and twelve days from June 3, 2014 to July 15, 2014, is administrative delay to be weighed against the State. *Cf. State v. Flores*, 2015-NMCA-081, ¶ 13, 355 P.3d 81 (concluding that a period of delay caused by the prosecutor's scheduling conflict was administrative delay to be weighed against the state).

**{25}**    On June 9, 2014, Defendant filed a motion to determine Victim's competency to testify. Consequently, the district court vacated the trial setting and scheduled a motion hearing for August 21, 2014. We therefore weigh the period of delay from July 15, 2014 to August 21, 2014, a total delay of one month and six days, against Defendant. *See Stock*, 2006-NMCA-140, ¶¶ 19-22, 29; *see also Steinmetz*, 2014-NMCA-070, ¶ 47. On August 6, 2014, the State filed a motion to continue the motion hearing because of a scheduling conflict. The district court granted the State's motion and rescheduled the hearing for August 29, 2014. We weigh the delay of eight days from August 21, 2014 to August 29, 2014, as administrative delay against the State. *See Flores*, 2015-NMCA-081, ¶ 13 (concluding that a period of delay caused by the prosecutor's scheduling conflict was administrative delay to be weighed against the state).

**{26}**    Following the August 29, 2014 competency hearing, the district court found Victim was not competent to testify. On September 4, 2014, the State filed a motion to reconsider, and the district court scheduled a motion hearing for October 17, 2014. On November 20, 2014, the district court granted the State's motion, finding Victim competent to testify. The district court then scheduled a jury trial for September 30, 2015. We weigh the delay of two months and twenty-two days from August 29, 2014 to November 20, 2014, as administrative delay against the State. *See State v. Samora*, 2016-NMSC-031, ¶¶ 15, 17, 387 P.3d 230 (holding that a period of delay which included time necessary to resolve the state's motions was administrative delay to be weighed against the state); *State v. Suskiewich*, 2016-NMCA-004, ¶¶ 12, 16, 363 P.3d 1247 (holding that a period of delay which included the state's motion to reconsider was administrative delay to be weighed against the state); *Flores*, 2015-NMCA-081, ¶¶ 25-26 (same).

**{27}** The case was proceeding normally toward trial when on May 21, 2015, Defendant filed a motion to dismiss on speedy trial grounds. At the hearing on Defendant's speedy trial motion, the district court determined that although there was no speedy trial violation, they were "getting very, very close to one." Accordingly, the district court rescheduled the jury trial for July 21, 2015. As the case was proceeding normally toward trial from November 20, 2014 to July 21, 2015, we weigh this delay of eight months and one day neutrally. *See Brown*, 2017-NMCA-046, ¶ 19.

**{28}** In sum, we weigh approximately eleven months neutrally, nearly ten months against Defendant, and approximately four months against the State. Accordingly, this factor does not weigh in Defendant's favor.

### 3.     Assertion of the Right

**{29}** "The timeliness and vigor with which the right to a speedy trial is asserted may be considered as an indication of whether a defendant was denied the right to a speedy trial over his objection or whether the issue was raised on appeal as an afterthought." *Id.* ¶ 29 (alterations, internal quotation marks, and citation omitted). As a result, "appellate courts assess the timing of the defendant's assertion and the manner in which the right was asserted." *Id.* (alteration, internal quotation marks, and citation omitted). "We accord weight to the frequency and force of the defendant's objections to the delay and analyze the defendant's actions with regard to the delay." *Id.* (alteration, internal quotation marks, and citation omitted).

**{30}** The district court found Defendant had "repeatedly asserted his right." While the record supports this finding, we must still determine the weight to be assigned under this factor. Defendant first asserted his speedy trial right on December 27, 2013, in conjunction with his counsel's initial entry of appearance. "Such pro forma motions are generally afforded relatively little weight in this analysis." *State v. Urban*, 2004-NMSC-007, ¶ 16, 135 N.M. 279, 87 P.3d 1061. His next two assertions occurred at hearings on May 27, 2014 and August 18, 2014. These assertions, however, occurred immediately prior to and during the delay caused by Defendant's motion to determine Victim's competency to testify and are given little weight. *See Flores*, 2015-NMCA-081, ¶ 31 ("Although we accord weight to the frequency and force of the defendant's objections to the delay, the force of a defendant's assertions is mitigated where he filed motions that were bound to slow down the proceedings[.]" (alteration, internal quotation marks, and citation omitted)). We accord Defendant's third assertion, made at a hearing on September 8, 2014, after the State filed its motion to reconsider, appropriate weight. *See Garza*, 2009-NMSC-038, ¶ 32 (explaining that "we accord weight to the frequency and force of the defendant's objections to the delay" (internal quotation marks and citation omitted)). His final assertion was his motion to dismiss on speedy trial grounds. As Defendant filed this motion approximately four months prior to the scheduled trial setting, and he requested dismissal rather than a prompt trial, we accord Defendant little weight for this assertion. *See State v. Ortiz-Burciaga*, 1999-NMCA-146, ¶ 35, 128 N.M. 382, 993 P.2d 96 (holding that we do not give a defendant "much weight" for an assertion made in a motion for dismissal rather than for a prompt trial); *cf. State v.*

*Moreno*, 2010-NMCA-044, ¶ 35, 148 N.M. 253, 233 P.3d 782 (concluding that we weigh the "assertion of the right" factor slightly in the defendant's favor when one of the defendant's two assertions was made two and one-half months before the scheduled trial setting). We therefore conclude that this factor weighs only slightly in Defendant's favor.

### 4.    Prejudice

**{31}**    "The heart of the speedy trial right is preventing prejudice to the accused." *Brown*, 2017-NMCA-046, ¶ 33 (internal quotation marks and citation omitted). "The United States Supreme Court has identified three interests under which we analyze prejudice to the defendant: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Garza*, 2009-NMSC-038, ¶ 35 (internal quotation marks and citation omitted). "Generally, the defendant has the burden of proof to show 'particularized prejudice.' " *Brown*, 2017-NMCA-046, ¶ 33 (internal quotation marks and citation omitted). "Because some degree of oppression and anxiety is inherent for every defendant who is jailed awaiting trial, the defendant bears the burden to establish that the pretrial incarceration or the anxiety suffered by the defendant is undue." *Id.* (alteration, internal quotation marks, and citation omitted).

**{32}**    Defendant argues he "suffered anxiety for eighteen months while nine serious felony charges hung over his head[.]" However, Defendant offers no evidence suggesting his anxiety was *undue.* As Defendant has failed to make a particularized showing of prejudice, we do not accord Defendant weight under this factor.

### 5.    Balancing the *Barker* Factors

**{33}**    In sum, the length of delay weighs slightly in Defendant's favor, the reasons for delay do not weigh in Defendant's favor, Defendant's assertion of his right weighs slightly in his favor, and Defendant has failed to show prejudice. As a result, we conclude Defendant's right to a speedy trial was not violated. *See Garza*, 2009-NMSC-038, ¶ 40 (concluding the defendant's right to a speedy trial was not violated when he "failed to show prejudice, and the other factors did not weigh heavily in [his] favor"); *State v. Gallegos*, 2016-NMCA-076, ¶ 32, 387 P.3d 296 ("[E]ven in the absence of a showing of particularized prejudice, the state violates a defendant's constitutional right to a speedy trial when the defendant demonstrates that the length of delay and the reasons for the delay weigh heavily in the defendant's favor and the defendant has asserted his right and not acquiesced to the delay." (alterations, internal quotation marks, and citation omitted)).

## C.    Due Process and Jury Instructions

**{34}**    Defendant next argues the State violated his due process right by prosecuting him under "multiple carbon-copy counts." In particular, Defendant appeals the district court's denial of his mid-trial motion to dismiss the charges against him based on the

lack of distinguishing facts or circumstances between the various charges. We review the district court's ruling de novo. *See State v. Dominguez*, 2008-NMCA-029, ¶ 5, 143 N.M. 549, 178 P.3d 834 ("We analyze the dismissal of criminal charges on due process grounds under a de novo standard[.]" (internal quotation marks and citation omitted)).

**{35}** "Procedural due process under the Fourteenth Amendment to the United States Constitution requires the [s]tate to provide reasonable notice of charges against a person and a fair opportunity to defend." *Id.* (internal quotation marks and citation omitted). "Procedural due process also requires that criminal charges provide criminal defendants with the ability to protect themselves from double jeopardy." *Id.* (internal quotation marks and citation omitted). "This Court has recognized that the failure to describe the offenses in an indictment with some particularity violates due process where there are allegations that several similar incidents took place and the defendant cannot tell from the charging document which events he is being prosecuted for." *Id.* ¶ 10. "Although we have allowed some leeway in the charging period where child victims are unable to recall dates with specificity, we have never held that the [s]tate may move forward with a prosecution of supposedly distinct offenses based on no distinguishing facts or circumstances at all, simply because the victim is a child." *Id.* (citations omitted) "When a child cannot remember specific dates, a defendant may still have adequate notice if the child *or other witnesses* are able to provide facts sufficient to identify distinct incidents of abuse." *Id.* (emphasis added).

**{36}** Victim testified that Defendant touched her clothed breasts, and genital area. In his extrajudicial confession, Defendant gave detailed accounts of separate incidents of CSCM (clothed), CSCM (unclothed), and CSPM, including the distinguishing facts of the separate sexual acts he committed, where they occurred in the house, and when they happened. Defendant's admissions, along with Victim's testimony, were sufficient to provide Defendant with adequate notice concerning the counts of CSPM and CSCM. For the same reasons, we conclude the evidence was sufficient to protect Defendant against double jeopardy. *See State v. Salazar*, 2006-NMCA-066, ¶ 31, 139 N.M. 603, 136 P.3d 1013 ("[I]f there was sufficient evidence from which the jury could have found that each act was in some sense distinct from the other, then the conduct was not unitary.").

**{37}** Ancillary to his due process argument, Defendant argues that the State's submission of "carbon-copy" jury instructions for the multiple counts of CSPM, as well as the multiple counts of CSCM (unclothed) and CSCM (clothed) was impermissibly confusing, thereby leaving it to the jury to sort out a basis for conviction. We review preserved assertions of error in jury instructions for reversible error. *See State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 ("If the error has been preserved we review the instructions for reversible error."). We review assertions of error in jury instructions "to determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *Id.* (internal quotation marks and citation omitted). "[J]uror confusion or misdirection may stem not only from instructions that are facially contradictory or ambiguous, but from instructions which, through

omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *Id.*

**{38}**    Relying on *State v. Nichols*, 2016-NMSC-001, 363 P.3d 1187, Defendant argues the State improperly "le[ft] it to the jury to sort out to find a basis for conviction." In *Nichols*, the state presented the jury with two different theories, but did not explain the difference between them. *Id.* ¶ 36. As our Supreme Court explained, "[t]he [s]tate cannot offer a confusing array of evidence, submit several vague jury instructions on various potential theories, and leave to the jury the responsibility of putting it all together to find a basis for a conviction." *Id.* As we have concluded above, the evidence presented at trial, including Defendant's admissions, provided the jury sufficient evidence from which it could find distinct acts of CSPM and CSCM. Moreover, the State explained in closing argument which conduct was associated with the CSPM and CSCM counts. We conclude that a reasonable juror would not have been confused by the jury instructions and the instructions were therefore not given in error. *See Salazar*, 2006-NMCA-066, ¶ 31 ("[T]here was sufficient evidence presented to the jury from which it could have found two separate incidents of criminal sexual penetration. The fact that each incident was instructed identically does not change this conclusion.").

## II.    CONCLUSION

**{39}**    The judgment and sentence are affirmed.

**{40}    IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**BRIANA H. ZAMORA, Judge**